**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JASON E. WALLS, ET AL. | CIVIL ACTION NO. 22-579 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| SHERIFF'S OFFICE OF CADDO PARISH, ET AL. | MAGISTRATE JUDGE HORNSBY |

## <u>MEMORANDUM RULING</u>

Before the Court is a motion to dismiss, filed by Defendants Caddo Parish Sheriff Steve Prator ("Sheriff Prator") and Deputy Ryan Chapman ("Chapman") (collectively, "Defendants"). Record Document 4. For the reasons below, the motion [Record Document 4] is **GRANTED IN PART** and **DENIED IN PART**.

## I.   <u>Background</u>

Plaintiffs, Jason and William Walls, are the surviving heirs of William E. Walls, Sr. ("Walls"). Record Document 1-2 ¶ 2. According to Plaintiffs' complaint, Walls, an elderly man, suffered a fatal heart attack after an encounter with Chapman on March 9, 2021. *Id.* ¶¶ 3, 10-11. On the fatal day, Chapman and other Caddo Parish Sheriff's Office deputies were attempting to execute an arrest warrant for Chad Deloach ("Deloach"), whom deputies believed to be living in a separate residence located on Walls's property. *Id.* ¶ 9. Plaintiffs allege that Walls cooperated with deputies and told them that he did not know Deloach's location but consented to the search of his residence. *Id.* ¶ 12. They further allege that Walls offered to call his son, who lived in separate trailer on his property, to inquire as to Deloach's whereabouts. *Id.* Chapman allegedly rejected Walls's assistance, cursed at him, and ordered him back inside his house. *Id.* Walls complied. *Id.*

After returning inside his residence, Walls allegedly observed the officers searching the exterior of an adjacent property and attempted to call his son. *Id.* ¶¶ 6, 12-13. Plaintiffs contend that Chapman, angered by what he perceived as Walls videotaping the deputies, approached Walls's residence once again. *Id.* ¶¶ 7, 13. Plaintiffs allege that Walls opened the door and revoked any prior consent to the search of his home, however, Chapman forced his way into the residence to detain Walls. *Id.* ¶¶ 6-13. Chapman allegedly "forcefully grabbed and pushed [Walls] up against a breakfast bar in his residence" and then handcuffed and "forcefully pulled [Walls] from [Walls's] residence and then pushed [Walls] against the hood of [Chapman's] patrol car." *Id.* ¶ 10. Chapman then placed Walls in the back of the patrol car. *Id.*

After detaining Walls, Plaintiffs contend that Chapman threatened to arrest Walls to coax out information on Deloach's location. *Id.* ¶ 9. Specifically, Plaintiffs represent that Chapman threatened to arrest Walls if Deloach did not emerge from the adjacent home or if Walls's son did not produce Deloach. *Id.* ¶¶ 9, 15. Deloach, however, was not on the property, and nobody emerged from the adjacent home. *Id.* ¶¶ 9, 15. Shortly after, while still in the back of the patrol car, Walls suffered a heart attack and stopped breathing; although resuscitation was attempted, Walls died. *Id.* ¶¶ 10-11.

Plaintiffs filed the instant suit, asserting various claims pursuant to 42 U.S.C. § 1983 and Louisiana state law. Plaintiffs' § 1983 claims against Chapman include unlawful detention, unlawful arrest, excessive force, and obstruction of justice.  Plaintiffs also allege municipal liability claims against the Caddo Parish Sheriff's Office and Sheriff Steve Prator for failing to "instruct, supervise, control, and discipline" Chapman on citizen encounters,

due process rights during an arrest, use of force, and truthful and accurate reporting of facts in interviews and/or reports.  Plaintiffs have also brought a number of state causes of action against Defendants.

The instant Federal Rule of Civil Procedure 12(b)(6) motion seeks dismissal of:  (1) Plaintiffs' excessive force claim against Chapman; (2) Plaintiffs' wrongful death claim insofar as it alleges that Walls's death was caused by Chapman's excessive force, false imprisonment, unlawful entry, or obstruction of justice; and (3) Plaintiffs' municipal liability claims against Sheriff Prator for failure to train, supervise, and discipline, as well as the alleged ratification of Chapman's actions.

## II.    **Motion to Dismiss Standard**

To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See Twombly*,

550 U.S. at 555; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678-79. A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678-79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

**III.**   **Analysis**

    A.   Excessive Force

Section 1983 provides a federal cause of action for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" against any person acting under color of state law.  42 U.S.C. § 1983.  Section 1983 does not itself create substantive rights; rather, it merely provides remedies of rights guaranteed to citizens by the United States Constitution or other federal laws.  *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  In the instant case, Plaintiffs contend that Chapman used excessive force during the alleged unlawful arrest of Walls.  Chapman has invoked qualified immunity on this claim.

The Fourth Amendment provides the "right to be free from excessive force during a seizure." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012)).  To prevail on an excessive force claim and thereby establish a constitutional violation, Plaintiffs must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).  Because reasonableness is the "ultimate touchstone" of the Fourth Amendment, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006), excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer, *Graham*, 490 U.S. at 396.  Relevant factors include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*  "[O]fficers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'"  *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).

The reasonableness of the officers' conduct cannot be judged with 20/20 hindsight, but rather must be assessed from the viewpoint of a reasonable officer on the scene at that very moment.  *See Graham*, 490 U.S. at 396.  Indeed,

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances

that are tense, uncertain, and rapidly evolving—about the amount of force
that is necessary in a particular situation.

*Id.* at 396-97 (internal citations and marks omitted).  "Excessive force claims are [thus]

necessarily fact-intensive and depend [] on the facts and circumstances of each particular

case."  *Poole*, 691 F.3d at 627–28 (internal citations and marks omitted).  The facts must

be judged objectively "without regard to [the officer's] underlying intent or motivation."

*Graham*, 490 U.S. at 397.   As such, an officer's ill will or evil intentions are not

determinative.  *Id.*

> i.    *Qualified Immunity*

As set forth above, Chapman invokes the defense of qualified immunity in response

to Plaintiffs' excessive force claim.  The doctrine of qualified immunity shields government

officials from liability for claims against them in their individual capacity "insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity serves to shield government officials from harassment, distraction, and

liability when they perform their duties reasonably, and it applies regardless of whether

the official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed

questions of law and fact."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh

v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).  A § 1983 complaint must

allege that the constitutional or statutory deprivation was intentional or due to deliberate

indifference and not the result of mere negligence.  *Farmer v. Brennan*, 511 U.S. 825

(1994); *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation.  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).  While qualified immunity is technically an affirmative defense, once it has been raised, it is the plaintiff's burden to negate the defense.  *Poole*, 691 F.3d at 627.

In *Saucier v. Katz,* 533 U.S. 194, 201 (2001), the Supreme Court held that a court ruling upon the issue of qualified immunity must apply a two-step analysis.  First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right."  *Id.*  Second, if a violation has been established, the court must determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question.  *See id.*; *Freeman*, 483 F.3d at 411.  The court may evaluate these steps in whichever order it so chooses.[2]  "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."  *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).  If officers of reasonable competence could disagree as to whether the plaintiff's rights

---

[2] In *Pearson*, the Supreme Court held that while the sequence set forth in *Saucier* is often appropriate, it is no longer mandatory.  *Pearson*, 555 U.S. at 236.  Instead, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*

were violated, the officer's qualified immunity remains intact.  *See Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 343 (1986) (holding the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law.")) The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the court.  *See Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (citing *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)).

To be clearly established, a legal principle must be found in the holdings of either "controlling authority" or a "robust 'consensus of cases of persuasive authority,'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)), and defined with a "high 'degree of specificity,'" *District of Columbia v. Wesby*, —U.S.—, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)).  It is not that a case must be directly on point, but rather existing precedent must have provided sufficient notice that the acts violate the Constitution.  *See Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). The "clearly established" test ensures that officials have "fair warning" that particular conduct violates the Constitution. *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

Here, this Court must consider whether, viewing the facts in the light most favorable to the Plaintiffs, Chapman's actions violated Walls's Fourth Amendment right to be free from excessive force.  If the Plaintiffs can establish the violation of Walls's constitutional right to be free of excessive force, the Court will then analyze the second element of

qualified immunity, which is whether the right was clearly established at the time of the alleged misconduct.

      ii.   *Analysis*

Chapman provides very little analysis or argument to support his request for dismissal of the excessive force claim, and he altogether fails to analyze the applicability of qualified immunity. In essence, Chapman argues that Plaintiffs failed to adequately allege excessive force because their allegations amount to de minimis injuries. Chapman contends that Plaintiffs' allegations that Walls was "pushed or pulled or shoved" are inadequate because "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion." Record Document 4-1, pp. 4-5. The Court disagrees, finding that Plaintiffs have adequately pled this claim at this stage of the proceedings.

The Court considers the *Graham* factors of the severity of the crime at issue, whether Walls posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. Application of these factors confirms that Chapman's conduct was objectively unreasonable, as not a single factor weighs in favor of the application of force. First, Walls was not suspected of any crime whatsoever; indeed, he was simply a bystander who had thus far cooperated with law enforcement. *See Goodson*, 202 F.3d at 740 (finding a lack of reasonable suspicion to detain determinately weighs against use of force); *Trammell*, 868 F.3d at 340 (finding a misdemeanor weighs against use of force). Second, under Plaintiffs' version of the facts, Walls posed no threat to the safety of the officers or others. He was an elderly

man, he was outnumbered by the officers, and he had initially cooperated with the deputies in their quest for Deloach.  As to the third factor of whether Walls was actively resisting or attempting to evade arrest, Plaintiffs' version of the facts makes it clear that he was doing neither.  He was simply in his own home when police arrived with the desire to search the property for Deloach, and he was subsequently handcuffed and allegedly assaulted by Chapman.  In sum, the *Graham* factors suggest the use of force was excessive.

Chapman, however, can still escape liability if Plaintiffs cannot show that his conduct was unreasonable in light of clearly established law. It has been clearly established that "violently slam[ming] an arrestee who is not actively resisting arrest" is a constitutional violation. *Darden*, 880 F.3d at 731 (citing *Ramirez v. Martinez*, 716 F.3d 369, 377-78 (5th Cir. 2013)); *see Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (holding that as of 2013, "clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and [was] stopped for a minor traffic violation"). Passive resistance does not allow an officer to deploy violent force. *Deville*, 567 F.3d at 167-68 (denying qualified immunity after officer stopped a woman for a minor traffic violation and then proceeded to pull her out of the car and slam her against the vehicle when met with at most passive resistance). Based on the allegations in the complaint, Chapman's conduct violated clearly established law.

Accordingly, based on the sufficiency of the Plaintiffs' allegations, Chapman is not entitled to qualified immunity, and the motion to dismiss is denied in this respect.

     B.    <u>Wrongful Death</u>

Defendants move to dismiss Plaintiffs' wrongful death allegation based on causation, arguing it is an "inflammatory allegation lacking any purported basis."  Record Document 4-1 at 5.  More specifically, Defendants claim that any allegation that excessive force, false imprisonment, unlawful entry, or obstruction of justice caused Walls's death is conclusory and insufficiently pled.  At this preliminary stage of the proceedings, the Court disagrees.  Plaintiffs' complaint sufficiently alleges that Chapman's unlawful acts caused Walls to suffer a fatal heart attack.  These claims have facial plausibility, which is all that is required at this stage.   Defendants' arguments on causation may be reurged in a motion for summary judgment but are premature in the instant motion to dismiss.  The motion is denied in this respect.

     C.    <u>Municipal Liability</u>

Finally, Defendants move to dismiss Plaintiffs' municipal liability claims against Sheriff Prator for the alleged failure to train, supervise, and discipline Chapman, as well as the alleged ratification of Chapman's unconstitutional conduct.[1]  Specifically, Plaintiffs aver that:

---

[1] In their complaint, Plaintiffs name both Caddo Parish Sheriff's Office and Sheriff Prator as Defendants. Record Document 1-2 at ¶ 1.  However, Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." La. Civ. Code art. 24.  Caddo Parish Sheriff's Office does not constitute a juridical person under the law. *See Cozzo v. Tangipahoa Par. Council-*

> [a]cting under color of law and pursuant to official policy or custom, Caddo Parish Sheriff's Office and [Sheriff Prator], through supervisory personnel . . . knowingly, recklessly, and with deliberate indifference and callous disregard for [Walls's] rights, failed to instruct, supervise, control, and discipline the defendant deputy on his duties relevant to citizen encounters, the basic due process rights implicated in an arrest scenario, the appropriate use of force, and truthfully and accurately reporting facts in interviews and official police reports. . . . Caddo Parish Sheriff's Office and [Sheriff Prator], by failing to initiate discipline against [Chapman] and the other deputies involved in this incident directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of the police officer heretofore described.

Record Document 1-2 at ¶ 17.

A municipality cannot be held liable for the actions of its employees under the traditional respondeat superior theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).   However, a municipality may be sued if it is "alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by officers of the municipality. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988).   Thus, there must be an underlying constitutional violation in order to impose liability on the sheriff, supervisor, or municipality. *See Baughman v. Hickman*, 935 F.3d 302, 311 (5th Cir. 2019); *see also City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (a finding that police officer did not inflict constitutional injury on plaintiff removed any basis for liability against city and members of police commission).

To successfully establish municipal liability, a plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)

---

*President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued, Louisiana Sheriffs are amenable to suit.").

(citing *Monell*, 436 U.S. at 694). An "official policy" can be evidenced through "duly promulgated policy statements, ordinances or regulations," or by a custom that is such a persistent and widespread practice that, although not officially promulgated, it fairly represents a municipal policy. *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168-69 (5th Cir. 2010). Requiring a plaintiff to identify an official policy ensures that municipalities will only be held liable for constitutional violations that result from the decisions of government officials whose acts can be fairly attributed to those of the municipality itself. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404-05 (1997).

To establish the existence of a custom or unofficial policy, a plaintiff must allege that the unconstitutional conduct occurred in cases other than his own or, in rare circumstances, that a final policymaker took a single unconstitutional action. *Zarnow*, 614 F.3d at 169 (5th Cir. 2010). "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581; *see Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) ("To plausibly plead a practice so persistent and widespread as to practically have the force of law, . . . a plaintiff must do more than describe the incident that gave rise to his injury." (cleaned up)).

### i.   *Failure to Supervise, Train, and Discipline*

Plaintiffs allege that Sheriff Prator failed to supervise, train, and discipline Chapman. To state a claim against a municipality for failure to train, supervise, or discipline, Plaintiffs must allege:  (1) inadequate training, supervision, or discipline of an employee; (2) the municipality was deliberately indifferent in adopting the deficient policies; and (3) the

inadequate training, supervision, or discipline directly caused a violation of the plaintiff's constitutional rights. *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir. 2003); *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020).

Deliberate indifference requires actual or constructive notice that a particular deficiency will cause the violation of a plaintiff's constitutional rights, yet the municipality nevertheless chooses to retain that program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Deliberate indifference can be shown in two ways. First, "deliberate indifference generally requires notice of a pattern of similar violations at the time the plaintiff's own rights were violated." *Robles v. Ciarletta*, 797 F. App'x 821, 833–34 (5th Cir. 2019). Indeed, the Fifth Circuit has repeatedly held that a pattern of similar constitutional violations by untrained and unsupervised employees is ordinarily necessary to demonstrate deliberate indifference. *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018), *as revised* (Sept. 25, 2018), 905 F.3d at 317; *see Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (explaining that proof of more than a single instance is normally required to constitute deliberate indifference).

However, where a plaintiff cannot establish a pattern of similar violations, the Fifth Circuit has recognized a "narrow exception" when a constitutional violation is the "highly predictable consequence" of a municipality's failure to properly hire, train, supervise, or discipline. *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021). A violation is 'highly predictable' where the municipality 'fail[s] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id.* at 482-83.

As the Fifth Circuit has explained, a plaintiff must establish more than "a mere 'but for' coupling of cause and effect. The [municipality's] deficiency must be the actual cause of the constitutional violation." *Shumpert*, 905 F.3d at 317.  Absent notice of a deficiency "in a particular respect, decision makers can hardly be said" to have acted with deliberate indifference.  *Id*.

      ii.    *Ratification*

In addition to alleging failure to train, supervise, and discipline Chapman, Plaintiffs argue Sheriff Prator ratified Chapman's misconduct. Record Document 1-2 at ¶ 17. The Fifth Circuit recognizes municipal liability under a theory of ratification, though it is limited to "extreme factual situations." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (internal quotation marks and citations omitted). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* at 854 (quoting *City of St. Louis*, 485 U.S. at 127).

      iii.    *Analysis*

After a review of the pleadings, the Court concludes that Plaintiffs' *Monell* claims regarding supervision, training, and ratification are impermissibly vague and conclusory. Invoking the term "*Monell*" is not enough to survive a motion to dismiss.  *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).  To state a *Monell* claim, Plaintiffs "must allege with specificity how a particular" policy "is defective." *Anokwuru v. City of Hous.*, 990 F.3d 956, 965 (5th Cir. 2021) (internal quotation marks and citations omitted).  Then, they must allege deliberate indifference and causation.  Here, Plaintiffs were required to

sufficiently allege Sheriff Prator had actual or constructive notice that a particular deficiency would violate Walls's constitutional rights, that he chose to retain the program regardless of the consequences, and that the deficient policies caused Walls's injuries.

In the instant case, Plaintiffs' complaint fails to meet these pleading standards.  In general, Plaintiffs' complaint has not identified any official policy of any sort.  That is a fundamental element of a *Monell* claim.  In addition, they neglect to pinpoint a deficiency in the policies or provide other supporting information such as prior similar violations that occurred due to these deficiencies, how long the policies have been in effect, what procedures for training or supervision were routinely disregarded, or how Sheriff Prator ratified Chapman's conduct.

At this stage of the proceedings, Plaintiffs are required to state a claim to relief that is plausible on its face.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal*, 556 U.S. at 678.  This plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*   The complaint cannot be simply "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 555-56.   As the Fifth Circuit has explained, in order to survive a 12(b)(6) motion, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at

trial." *Rios v. City of Del Rio*, 444 F.3d 417, 420–21 (5th Cir. 2006) (internal marks and citation omitted).  Moreover,

> a statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.  The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint.  Further, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.

*Id.* at 421 (internal marks and citations omitted).

In this case, Plaintiffs' *Monell* allegations regarding supervision, training, and ratification lack the foundation necessary to satisfy their pleading burden.  The Court is not required to accept threadbare and conclusory allegations, as these cannot stand in for facts.  Accordingly, the claims of failure to train and supervise, along with a claim of ratification of unlawful behavior, are dismissed.

The Court finds, however, that one *Monell* claim survives dismissal at this time.  In the opposition to the motion to dismiss, Plaintiffs allege for the first time that "[t]he code of silence or thin blue line is such a pervasive culture among law enforcement across the country . . . . The essential element in the code of silence and thin blue line is the commitment of officers not to report violations by fellow officers." Record Document 8 at 20-21. Plaintiffs further contend that the failure to pursue disciplinary action against Chapman is evidence that the "code of silence" and "thin blue line" culture are present and actively promoted and adopted by Sheriff Prator.

Though not commonly applied in the Fifth Circuit, a policy or custom promoting a "code of silence" can leave a police department vulnerable to a *Monell* claim. *See Snyder*

*v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998) (citing *Grandstaff v. City of Borger, Tex.,* 767 F.2d 161 (5th Cir. 1985)).  While this theory is not adequately pled in Plaintiffs' complaint, the Court will allow Plaintiffs leave to amend their complaint solely with respect to this claim.  Defendants have the right to file another motion to dismiss on this claim once it has been properly amended.  Plaintiffs' amended complaint is due by **May 1, 2023**.

IV.   **Conclusion**

Based on the foregoing reasons, Defendants' motion to dismiss [Record Document 4] is **GRANTED IN PART** and **DENIED IN PART**.  It is granted as to the dismissal of Plaintiffs' *Monell* claims regarding failure to supervise and train, and the claim of ratification.  These claims are **DISMISSED WITH PREJUDICE.**  It is denied in all other respects.

**THUS DONE AND SIGNED** this 31st day of March, 2023.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE